838 A.2d 520

P & A CONSTRUCTION, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. TOWNSHIP OF WOODBRIDGE, A BODY CORPORATE OF THE STATE OF NEW JERSEY; F. MONTECALVO CONTRACTING CO., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS–RESPONDENTS, AND DEFINO CONTRACTING CO., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued November 5, 2003—Decided January 6, 2004.

166

Before Judges SKILLMAN, WELLS and FISHER.

*Richard M. Salsburg* argued the cause for appellant (*Mandelbaum, Salsburg, Gold, Lazris, Discenza & Steinberg,* attorneys; *Mr. Salsburg,* on the brief).

*James P. Nolan, Jr.*, argued the cause for respondent *Township of Woodbridge* (*Nolan and Hynes*, attorneys; *Mr. Nolan*, on the brief).

*John L. Antonas* argued the cause for respondent *F. Montecalvo Contracting Co.* (*Jorgensen & Barnes*, attorneys; *Peter J. Barnes, III*, on the brief).

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

The issue presented by this appeal is whether the 1999 amendments to the Local Public Contracts Law, *L.* 1999, *c.* 39, *N.J.S.A.* 40A:11–21 to –23.2, which contain a new section that makes certain types of bid defects automatic grounds for rejection of a bid, should be construed as an implicit authorization for a local contracting agency to waive any other type of bid defect. We conclude this new section was not intended to change existing law concerning the determination of waivability of bid defects other than the ones set forth therein. We also conclude that the requirement in the bid proposal involved in this case—submission of a certified financial statement—was material and hence not waivable by the contracting agency.

In December 2002, defendant Township of Woodbridge issued a solicitation for bids for road reconstruction work. Attached to the solicitation was a checklist of items bidders were required to submit with their bids. This checklist was divided into two subsections, A and B. The items listed under subsection A included a bid guarantee as required by *N.J.S.A.* 40A:11–21, a certificate from a surety company, pursuant to *N.J.S.A.* 40A:11–22, a statement of corporate ownership, pursuant to *N.J.S.A.* 52:25–24.2, and a listing of subcontractors as required by *N.J.S.A.* 40A:11–16. At the top of the subsection A checklist, it stated: "Failure to submit the following documents is a mandatory cause for the bid to be rejected (*N.J.S.A.* 40A:11–23.2)." The items listed under subsection B included a certified financial statement prepared within the last twelve months, a consent of surety as to a labor and material

payment bond, a non-collusion affidavit and a certificate showing that the bidder owns, leases or controls any necessary equipment. At the top of the subsection B checklist, it stated: "Failure to submit the following documents may be a cause for the bid to be rejected (*N.J.S.A.* 40A:11–23.1b.)."

Defendant F. Montecalvo Contracting Co. (Montecalvo) submitted the low bid for the road reconstruction work. However, Montecalvo's bid was not accompanied by "a certified financial statement prepared within the last twelve months," which was one of the items set forth under subsection B of the checklist. Instead, Montecalvo's president sent a letter with its bid which stated:

> F. Montecalvo Contracting Co., Inc. has been in business since 1976. We have over $5,000,000.00 worth of bonding capacity. Our corporate references should speak for themselves. Should F. Montecalvo Contracting Co., Inc. be the apparent low bidder on the project referenced above, we will submit our company's current financial statement if necessary. However, we feel that as a small, privately-held corporation, this information is confidential.

Shortly after the bids were opened, plaintiff P & A Construction, Inc. (P & A), the second low bidder, sent a letter to Woodbridge which contended that Montecalvo's bid was not responsive to the bid proposal because it was not accompanied by the required certified financial statement. P & A asked Woodbridge to reject Montecalvo's bid and award the contract to P & A.

Woodbridge denied P & A's challenge to Montecalvo's bid by letter dated June 16, 2003, which stated in pertinent part:

> [T]he Financial Statement is not one of the "mandatory requirements" set forth in *N.J.S.A.* 40A:11–23.2. Our "Checklist For Construction" at page C–13 section B states, "Failure to submit the following documents *may* be a cause for the bid to be rejected.
>
> Like P & A, we have many years of positive experience with Montecalvo and are confident in their ability to meet their contractual obligations. Accordingly, we are not inclined to dismiss their bid for that reason.

P & A then brought this action in lieu of prerogative writs to enjoin Woodbridge from awarding the contract to Montecalvo,

joining Woodbridge, Montecalvo and Defino Contacting Co.,[1] the third low bidder, as defendants. The case was brought before the trial court by order to show cause.

The court concluded in an oral opinion that, under the 1999 amendments to the Local Public Contracts Law, Montecalvo's failure to submit a certified financial statement with its bid was a waivable requirement:

[I]n public bidding, ... there's always ... these issues as to what is required and what is not required, and what is waivable and what is not waivable. There is a whole closet full of litigation that went on starting ... back in the early days and going up to in the late '90s. And the statute was amended in 1999. I can only presume that it was amended and that the Legislature was aware of the decisions of the Appellate Division and the Supreme Court dealing with bid documents and what was necessary and what's waivable and was not waivable. And the statute was amended and there was a statute that sets forth what is absolutely required that can never be waived ... and that is what is included in Part A of the bid documents.

. . . .

. . [T]hese bid documents went out and everybody had the same documents. And they had requests for certain information and it indicated to them what they wanted. And in one instance it was mandatory, nonwaivable. If you fail to submit documents you don't get the bid. The next one you can submit them or not submit them. If you don't submit them you may not get the bid. There's a risk. Everybody had the same information and had the same opportunity ... to provide the information or not provide it. So I don't see where there's any competitive edge.

... They're either going to submit the documents or not. It's not mandatory by the statute and the municipality indicates that perhaps they would like to have it. If they don't have it they can reject the bid.

. . . .

... If you don't submit [a certified financial statement] your bid could be rejected. [The bid proposal] doesn't say that it would but it could be. It may be cause for the bid to be rejected.... It's a waivable matter and the municipality chose to waive it.

Based on this opinion, the trial court entered an order which denied P & A's application for a preliminary injunction prohibiting the award of the contract to Montecalvo. The court also denied P & A's application for a stay pending disposition of a motion for

---

[1] Defino has not participated in this litigation.

leave to appeal. We granted P & A leave to appeal and stayed the award of the contract pending the outcome of the appeal.

The essential premise of the trial court's opinion was that even if a requirement of submission of a certified financial statement with a bid for a local public contract would have been nonwaivable under prior case law, such a requirement is now waivable because it is not one of the items *N.J.S.A.* 40A:11–23.2 explicitly declares to be mandatory and hence not subject to waiver. Consequently, we first consider whether the requirement of submission of a certified financial statement in Woodbridge's solicitation for bids was mandatory or optional. We next consider whether a requirement of submission of a certified financial statement would have been waivable by a local contracting agency before the 1999 amendments to the Local Public Contracts Law. We then consider the effect of those amendments upon the waivability of such a requirement.

■ Woodbridge's bid solicitation indicated that the submission of a certified financial statement was mandatory. Immediately above the column designated for the contracting agency to check off the items required to be submitted with a bid, subsections A and B of the "Checklist for Construction" both stated: "Required with submission of bid." This language is mandatory; any item checked off by the contracting agency is "required." Moreover, any such item is "[r]equired with [the] submission of [the] bid," rather than after bids are opened.

Notwithstanding this unequivocal directive, Montecalvo relies upon the additional statement under subsection (B) that: "Failure to submit the following documents *may* be a cause for the bid to be rejected." (Emphasis added.) Whatever this statement may mean (a point to which we shall return later in this opinion), it clearly does not mean that submission of any item set forth under subsection (B) is only optional, because the Local Public Contracts Law makes submission of one of those items—a certificate showing that the bidder owns, leases or controls the equipment required to perform the contract—mandatory when required by the

bid solicitation.[2]   Moreover, it seems unlikely that a contracting agency would give a bidder the option of either submitting or not submitting a non-collusion affidavit or a consent of surety to a maintenance bond, which are two of the other items set forth under subsection B. Consequently, the import of the statement that failure to submit one of the items listed under subsection B "may be cause for the bid to be rejected" is not that submission of those items is optional, but rather that failure to submit one of those items will result in rejection of the bid if the contracting agency finds the deficiency to be material.   Therefore, we conclude that Woodbridge's bid solicitation required all bidders to submit certified financial statements with their bids.

■   We next consider whether this requirement would have been waivable before the 1999 amendments to the Local Public Contracts Law. In *Township of River Vale v. R.J. Longo Constr. Co.,* 127 *N.J.Super.* 207, 216, 316 *A.*2d 737 (Law Div.1974), Judge Pressler articulated two criteria for determining whether a bid defect, such as a failure to submit a document required by a bid solicitation, constitutes a material and hence nonwaivable irregularity:

> [F]irst, whether the effect of a waiver would be to deprive the municipality of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements, and second, whether it is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition.

In *Meadowbrook Carting Co. v. Borough of Island Heights,* 138 *N.J.* 307, 315, 650 *A.*2d 748 (1994), our Supreme Court adopted the *River Vale* criteria for determining whether a bid defect is immaterial and hence subject to waiver.

---

[2] *N.J.S A.* 40A:11–20 provides:

> There may be required from any bidder submitting a bid on public work to any contracting unit, duly advertised for in accordance with law, a certificate showing that he owns, leases or controls all the necessary equipment required by the plans, specifications and advertisements. . .

Applying criteria similar to the ones set forth in *River Vale*, this court has concluded that the failure to submit a certified financial statement with a bid for a public contract is a material defect. In *Impac, Inc. v. Paterson*, 178 *N.J.Super.* 195, 428 *A.*2d 553 (App. Div.), *certif. denied*, 87 *N.J.* 414, 434 *A.*2d 1089 (1981), the low bidder submitted a financial statement, but the statement was not "certified ... [to be] fully itemized in accordance with accepted accounting standards and based on a proper audit[,]" as required by the bid solicitation. *Id.* at 202, 428 *A.*2d 553. In concluding that this defect was not waivable, we stated:

> There is no merit to the argument that this requested financial information constitutes an immaterial variance or surplusage which the city could waive, since, for example, the performance bond submitted by P–M guaranteed its financial capability. Even if P–M interpreted the questionnaire to require only an unaudited statement, other contractors may have been deterred from submitting a bid because they reasonably believed that they would have to submit an audited statement certified by an independent accounting firm. To allow P–M to escape this requirement would negate the principle of keeping all bidders on an equal footing.
>
> [*Ibid.*]

Although we held that there also were other defects in the bidding process involved in *Impac*, our opinion does not suggest that the low bidder's failure to submit a properly certified financial statement would have been insufficient, by itself, to require rejection of its bid. Moreover, although *Meadowbrook* did not involve a bidder's failure to submit a certified financial statement, the Court's opinion noted that "[t]he Legislature obviously regarded the financial capacity of a bidder to be a material and substantial consideration in the determination of the lowest responsible bidder, as evidenced by its adopting separate provisions within the Local Public Contracts Law to provide municipalities with a means of requiring prospective bidders to furnish in advance a statement of their financial capacity." 138 *N.J.* at 322, 650 *A.*2d 748; *see also Township of Hillside v. Sternin*, 25 *N.J.* 317, 323, 136 *A.*2d 265 (1957) ("The financial capacity of a bidder is a material and substantial consideration in connection with the award of contracts for public work.").

■ In any event, even if *Impac* and *Meadowbrook* do not definitively resolve the issue, we are satisfied that the requirement that a bidder submit a certified financial statement is material and hence nonwaivable under the *River Vale* criteria. As previously indicated, the first of those criteria is "whether the effect of a waiver would be to deprive the municipality of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements." 127 *N.J.Super.* at 216, 316 *A.*2d 737. The essential reason for requiring a bidder to submit a certified financial statement with its bid, as with the requirement that a bidder show that it owns, leases or controls whatever equipment is necessary to perform the contract (another one of the requirements set forth under subsection B of Woodbridge's bid checklist), is to provide assurance to the contracting agency that the bidder will be able to complete performance if it is awarded the contract. If a certified financial statement discloses that a bidder is insolvent or in shaky financial condition, this would provide a proper basis for the contracting agency to reject the bid on the ground that the bidder's ability to complete performance could be jeopardized by a lack of the financial resources required to pay suppliers and workers. Thus, a waiver of the requirement of submission of a certified financial statement could "deprive the municipality of its assurance that the contract will be ... performed ... according to its specified requirements." *Ibid.*

■ The second *River Vale* criteria for determining whether a bid requirement is material and hence nonwaivable is "whether it is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition." *Ibid.* In rejecting P & A's challenge to Montecalvo's low bid, Woodbridge stated: "[W]e have many years of positive experience with Montecalvo and are confident in their ability to meet their contractual obligations." The clear implication of this explanation for Woodbridge's waiver of the requirement that Montecalvo submit a certified financial statement is that

if the low bidder had been another contractor with which Woodbridge had not had "many years of positive experience," it could have rejected the bid on that basis. Consequently, even if the bid solicitation clearly informed potential bidders that Woodbridge retained discretion to waive the requirement of submission of a certified financial statement, this would not have placed bidders on a level playing field. It would have simply informed bidders in advance that they were playing on an unbalanced playing field in which Woodbridge could waive a bidding requirement based on prior positive experiences with the low bidder or for other more nefarious reasons. Such unfettered discretion in the hands of a contracting agency has the capacity to place "a bidder in a position of advantage over other bidders" and thereby "undermine[] the necessary common standard of competition." *Ibid.* Therefore, we conclude that a requirement that all bidders submit a certified financial statement with their bids is material and hence nonwaivable under the *River Vale* criteria.

■ This brings us to the essential issue posed by this appeal—whether the Legislature intended, in enacting the 1999 amendments to the Local Public Contracts Law, to confer authority upon local contracting agencies to waive bid defects that would have been considered material and therefore nonwaivable under prior law.

In concluding that a local contracting agency can waive a bidder's failure to submit a certified financial statement with its bid, the trial court relied upon *N.J.S.A.* 40A:11–23.2, a new section of Local Public Contracts Law enacted as part of the 1999 amendments, which provides:

When required by the bid plans and specifications, the following requirements shall be considered mandatory items to be submitted at the time specified by the contracting unit for the receipt of the bids; the failure to submit any one of the mandatory items shall be deemed a fatal defect that shall render the bid proposal unresponsive and that cannot be cured by the governing body:

   a. A guarantee to accompany the bid pursuant to [*N.J.S.A.* 40A:11–21];

   b. A certificate from a surety company pursuant to [*N.J.S.A.* 40A:11–22];

   c. A statement of corporate ownership pursuant to [*N.J.S.A.* 52:25–24.2];

d. A listing of subcontractors pursuant to [*N.J.S.A.* 40A:11–16]; and

e. A document provided by the contracting agent in the bid plans, specifications, or bid proposal documents for the bidder to acknowledge the bidder's receipt of any notice or revisions or addenda to the advertisement or bid documents.

The trial court concluded that because *N.J.S.A.* 40A:11–23.2 states that a bidder's failure to submit any one of the mandatory items set forth under subsections (a) through (e) "shall be deemed a fatal defect that shall render the bid proposal unresponsive and that cannot be cured by the governing body[,]" and a certified financial statement is not one of those five items, Woodbridge had the authority to deem this requirement immaterial and therefore waivable.

■ We reject this reasoning and conclude that the enactment of *N.J.S.A.* 40A:11–23.2 had a more limited effect on prior local public contracting law than the trial court ascribed to it. *N.J.S.A.* 40A:11–23.2 clearly constitutes a legislative directive that local contracting agencies must consider a bidder's failure to submit any of the five mandatory items set forth therein as a material defect that requires rejection of its bid. Thus, with respect to those five items, there is no need for a local contracting agency or reviewing court to apply the *River Vale* criteria for determining whether a bid defect is material and hence not waivable. However, *N.J.S.A.* 40A:11–23.2 does not contain any explicit legislative directive with respect to a contracting agency's authority to waive other types of bid defects. Consequently, the question is whether *N.J.S.A.* 40A:11–23.2 should be construed to give local contracting agencies implicit authority to waive any mandatory item that is not expressly set forth in this new section of Local Public Contracts Law.

Our courts have found a broad range of bid defects that are not encompassed by the five mandatory items set forth in *N.J.S.A.* 40A:11–23.2 to be material and hence nonwaivable. *See, e.g., L. Pucillo & Sons, Inc. v. Mayor and Council of New Milford*, 73 *N.J.* 349, 353–58, 375 *A.2d* 602 (1977) (failure to submit proposal for a five-year contract where bid solicitation required submissions for one-, two-, three-and five-year contracts); *Terminal Constr.*

*Corp. v. Atlantic County Sewerage Auth.,* 67 *N.J.* 403, 411–13, 341 *A.*2d 327 (1975) (failure to comply with affirmative action requirements); *Muirfield Constr. Co. v. Essex County Improvement Auth.,* 336 *N.J.Super.* 126, 132–37, 763 *A.*2d 1272 (App.Div.2000) (failure of plumbing contractor to show at least 10% ownership by licensed master plumber); *Hall Constr. Co. v. New Jersey Sports & Exposition Auth.,* 295 *N.J.Super.* 629, 635–39, 685 *A.*2d 983 (App.Div.1996) (failure to submit bid for portion of landscaping work); *Impac, supra,* 178 *N.J.Super.* at 202, 428 *A.*2d 553 (failure to submit certified financial statement). Therefore, the protections of the Local Public Contracts Law would be substantially weakened if *N.J.S.A.* 40A:11–23.2 were construed to authorize a local contracting agency to waive any bid defect other than the ones set forth therein. However, we find no indication in either the express language of *N.J.S.A.* 40A:11–23.2 or the overall objectives of the 1999 amendments to the Local Public Contracts Law that this was the Legislature's intent.

*N.J.S.A.* 40A:11–23.2, which is the only section of Local Public Contracts Law that deals with the waiver of bid requirements, is purely prohibitory; it requires rejection of any bid that does not include all of the mandatory items set forth therein. Although most of the items set forth in *N.J.S.A.* 40A:11–23.2 would probably be found to be nonwaivable even in the absence of this explicit legislative directive, *see Meadowbrook, supra,* 138 *N.J.* at 320–25, 650 *A.*2d 748 (consent of surety is material); *Gaglioti Contracting, Inc. v. City of Hoboken,* 307 *N.J.Super.* 421, 426–35, 704 *A.*2d 1301 (App.Div.1997) (list of subcontractors is material), *N.J.S.A.* 40A:11–23.2 forecloses a contracting agency from even considering whether the failure to submit any of those items is immaterial under the *River Vale* criteria. Furthermore, one of the items that *N.J.S.A.* 40A:11–23.2 makes nonwaivable under any circumstances is a bidder's written acknowledgement of "receipt of any notice or revisions or addenda to the advertisement or bid documents[,]" *N.J.S.A.* 40A:11–23.2(e), which would not obviously be considered material and hence nonwaivable in the absence of an explicit legislative directive. Thus, *N.J.S.A.* 40A:11–23.2 circumscribes

the authority of local contracting agencies to waive bid defects by designating five kinds of defects that cannot be waived under any circumstances.

However, the 1999 amendments to the Local Public Contracts Law do not contain any legislative directive concerning the waiver of other bid defects. We do not believe that this legislative silence can be reasonably construed as an affirmative authorization for local contracting agencies to waive any bid defect that is not expressly set forth in *N.J.S.A.* 40A:11–23.2. Instead, we conclude that *N.J.S.A.* 40A:11–23.2 should be construed as a legislative directive that a bidder's failure to submit any of the five mandatory items set forth therein shall automatically be considered a nonwaivable defect, but any other bid defect shall continue to be considered under the *River Vale* criteria of materiality.

This conclusion is reinforced by the fact that the other sections of the 1999 amendments to the Local Public Contracts Law enhance the protections provided by this statute. Although *N.J.S.A.* 40A:11–21 and 22 formerly gave local contracting agencies discretion to require a bid guarantee and a surety's certificate that it will issue a performance bond, sections three and four of the 1999 amendments make these requirements mandatory with respect to any contract "for the erection, alteration or repair of a building, structure, facility or other improvements to real property, the total price of which exceeds $100,000." *L.* 1999, *c.* 39, §§ 3, 4. In addition, section one of the 1999 amendments, which is codified as *N.J.S.A.* 40A:11–23.1, imposes new requirements on certain bidders to submit "(a) a document for the bidder to acknowledge the bidder's receipt of any notice or revisions or addenda to the advertisement or bid documents; and (b) a form listing those documentary and informational forms, certifications, and other documents that the contracting agent requires each bidder to submit with the bid." *L.* 1999, *c.* 39, § 1. Therefore, it would be inconsistent with the overall purpose of the 1999 amendments, which was to improve the protections of the Local Public Contracts Law by imposing additional requirements upon bidders

and new limitations upon the discretion of local contracting agencies, to construe *N.J.S.A.* 40A:11–23.2 as an implicit authorization for a local contracting agency to waive any bid requirement that is not explicitly set forth therein.

Finally, we note that the language of subsection (B) of Woodbridge's "Checklist for Construction," specifically the statement that "[f]ailure to submit the following documents *may* be a cause for the bid to be rejected" (emphasis added), may have led respondents to believe that Woodbridge could waive a bidder's failure to submit any of the items listed thereunder. At oral argument, counsel advised us that this checklist is a standard form issued by a state agency, presumably the Division of Local Government Services, to which the Legislature has assigned certain responsibilities for supervising compliance with the Local Public Contracts Law. See *N.J.S.A.* 40A:11–25, 37. Although the quoted language was undoubtedly intended to inform potential bidders that a bid which is not accompanied by one of the items set forth under subsection (B) "may be" rejected if that omission is found to be material under the *River Vale* criteria, it also is susceptible to the interpretation apparently placed on it by Woodbridge and Montecalvo, which is that a contracting agency has unfettered discretion to waive a bidder's failure to submit one of those items. Consequently, the language in this standard form should be changed.

Accordingly, we reverse the order denying plaintiff's application for injunctive relief and remand the case to the trial court for further proceedings in conformity with this opinion. We express no opinion as to whether P & A is now entitled to the award of the contract or whether Woodbridge has the option to reject all bids and rebid the contract, because the trial court, having denied P & A relief, did not address the issue, and it has not been briefed by the parties. If Woodbridge indicates an intent to rebid the contract, the trial court should decide this issue in light of the principles set forth in *Meadowbrook, supra,* 138 *N.J.* at 325–26, 650 *A.2d* 748; *PENPAC, Inc. v. Morris County Mun. Utils.*

*Auth.,* 299 *N.J.Super.* 288, 295–98, 690 *A.*2d 1094 (App.Div.), *certif. denied,* 150 *N.J.* 28, 695 *A.*2d 670 (1997); *Bodies by Lembo, Inc. v. County of Middlesex,* 286 *N.J.Super.* 298, 304–10, 669 *A.*2d 254 (App.Div.1995); and *Cardell, Inc. v. Township of Woodbridge,* 115 *N.J.Super.* 442, 449–51, 280 *A.*2d 203 (App.Div.1971).