850 A.2d 559 (2004)
370 N.J. Super. 60
STAR OF THE SEA CONCRETE CORP., Plaintiff-Respondent,
v.
LUCAS BROTHERS, INC. and Middlesex County Board of Freeholders, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued May 25, 2004.
Decided June 17, 2004.
*561 George E. Pallas argued the cause for appellant Lucas Brothers, Inc. (Cohen, Seglias, Pallas, Greenhall & Furman, attorneys; Mr. Pallas and Dana B. Ostrovsky, on the brief).
Eric M. Aronowitz, First Deputy County Counsel, argued the cause for appellant Middlesex County Board of Freeholders (Thomas F. Kelso, Middlesex County Counsel, attorney; Mr. Aronowitz, on the brief).
Sheryl M. Schwartz argued the cause for respondent (Herold & Haines, attorneys; Ms. Schwartz, on the brief).
Before Judges STERN, LEFELT and PAYNE.
*560 The opinion of the court was delivered by
LEFELT, J.A.D.
Middlesex County solicited bids for the improvement of a section of Ryders Lane in East Brunswick. Defendant Lucas Brothers, Inc. was awarded the contract as the low bidder, but upon a protest by Star of the Sea Concrete Corp., the second lowest bidder, Judge Longhi disqualified Lucas Brothers for failure to include with its bid a list of subcontractors. Failure to submit the list of subcontractors, "pursuant to Section 16 [N.J.S.A. 40A:11-16]," with a bid is "deemed a fatal defect" under N.J.S.A. 40A:11-23.2. The County and Lucas Brothers argue in this appeal, however, that because the list was not required by N.J.S.A. 40A:11-16, the omission was excusable. We disagree, and affirm Judge Longhi's decision to award the contract to the second lowest bidder, Star of the Sea.
The project for which Middlesex County solicited bids consisted of the widening and reconstruction of a portion of Ryders Lane, the installation of sidewalks, curbs, and drainage, together with modification of two traffic signals. The electrical work associated with modification of the traffic signals encompassed approximately ten percent of the cost of the overall project.
In connection with the bid solicitation, the County issued, pursuant to N.J.S.A. *562 40A:11-23.1, a "Bid Document Submission Checklist," which was divided into two sections, A and B. Section A of the checklist itemized five mandatory documents that the County requested with each bid. All of the five itemized documents contained a typed "x" in the box preceding the item under "owner's checkmarks," and the fourth requested "[a] listing of subcontractors as required by N.J.S.A. 40A:11-16." The checklist specifically provided that failure to submit any itemized section A document "is a mandatory cause for the bid to be rejected." Section B of the checklist listed other documents the County required with each bid, and provided that failure to submit any of the section B documents "will be a cause for the bid to be rejected," pursuant to N.J.S.A. 40A:11-23.1(b).[1] (emphasis added).
The County received fourteen bids, with the two lowest from Lucas Brothers ($2,310,928.58) and Star of the Sea ($2,358,792.66). Although Lucas Brothers' bid was over $47,000 less than Star of the Sea's, Star of the Sea's bid complied with all of the bid requirements. Lucas Brothers' bid, while indicating that it had included a list of subcontractors, failed to attach the promised document.
Star of the Sea filed a letter of protest with the Middlesex County Engineer's Office seeking to have Lucas Brothers' bid rejected for failing to comply with section A of the checklist. County Counsel rejected Star of the Sea's protest and indicated that he would recommend that the Board of Freeholders accept Lucas Brothers' bid as compliant with the bid specifications.
The Freeholders subsequently adopted a resolution awarding the contract to Lucas Brothers, and the next day Star of the Sea filed an order to show cause, with temporary restraints, and a verified complaint in lieu of prerogative writs, attempting to have the Freeholder's action reversed and Star of the Sea's bid recognized as the lowest bid complying fully with the bid solicitation.
The matter came before Judge Longhi who ruled that the listing of subcontractors was a mandatory, nonwaivable requirement, and that therefore, Lucas Brothers' bid was nonresponsive. Consequently, the judge directed that the project be awarded to Star of the Sea, and Lucas Brothers filed a timely notice of appeal. Judge Longhi stayed the contract award pending the outcome of the appeal, which we accelerated.
The Local Public Contracts Law, N.J.S.A. 40A:11-1 to -50, governs the advertising, bidding and contracting for the Ryders Lane project. The central issue in this dispute involves the meaning of N.J.S.A. 40A:11-23.2, which is part of the 1999 amendments to the Local Public Contracts Law. L. 1999, c. 39, § 2; N.J.S.A. 40A:11-21 to -23.2.
*563 N.J.S.A. 40A:11-23.2 provides that "[w]hen required by the bid plans and specifications, the following requirements shall be considered mandatory items to be submitted at the time specified by the contracting unit for the receipt of the bids." The provision continues by warning that "the failure to submit any one of the [following five] mandatory items shall be deemed a fatal defect that shall render the bid proposal unresponsive and that cannot be cured by the governing body." N.J.S.A. 40A:11-23.2; See P & A Constr., Inc. v. Tp. of Woodbridge, 365 N.J.Super. 164, 175, 838 A.2d 520 (App. Div.2004).
The first four of the five mandatory items included in N.J.S.A. 40A:11-23.2 are "[a] guarantee to accompany the bid pursuant to Section 21," a "certificate from a surety company pursuant to Section 22," a "statement of corporate ownership pursuant to Section 1," and the "listing of subcontractors pursuant to Section 16," upon which Lucas Brothers and the County focus our attention.[2]
The first paragraph of Section 16 references "the preparation of plans and specifications for the construction, altering or repair of any public building." N.J.S.A. 40A:11-16. Consequently, Lucas Brothers and the County argue primarily that because this road construction project is not a public building, see N.J.S.A. 52:32-6(a) (State bidding law's definition of public building), the list of subcontractors was either not required at all or immaterial and waivable, thereby rendering Lucas Brothers' bid fully responsive.
To consider the County and Lucas Brothers' argument, we assume for purposes of this opinion that N.J.S.A. 40A:11-16 was intended to apply only to bids responding to "plans and specifications for the construction, alteration or repair of any public building." Thus, the question becomes whether the Legislature incorporated this limitation into N.J.S.A. 40A:11-23.2 by using the phrase "pursuant to Section 16."
Preliminarily, we note that we can find no support for this argument in the Legislative history of the 1999 amendments. In addition, the argument is inconsistent with the intent of N.J.S.A. 40A:11-23.2, overlooks other language utilized by the Legislature in N.J.S.A. 40A:11-23.2, and conflicts with the goals of the 1999 amendments to the Local Public Contracts Law. Moreover, the result urged by Lucas Brothers and the County conflicts with prior case law.
The intent of N.J.S.A. 40A:11-23.2 was to "circumscribe[ ] the authority of local contracting agencies to waive bid defects by designating five kinds of defects that cannot be waived under any circumstances." P & A, supra, 365 N.J.Super. at 176-77, 838 A.2d 520. Under the construction urged by Lucas Brothers and the County, the contracting entity's request for subcontractor lists would be nonwaivable only for projects dealing with "public buildings." In all other bids, any request for subcontractor lists would be waivable even if required by the contracting entity and designated as nonwaivable in the bid solicitation. Such a result conflicts with the intent of N.J.S.A. 40A:11-23.2.
The construction urged by the County and Lucas Brothers also limits extraordinarily strong language contained in N.J.S.A. 40A:11-23.2. In accordance with this statute, and without any limitations specifically set forth, the Legislature provided that "the failure to submit any one of *564 the mandatory items shall be deemed a fatal defect." Ibid. The Legislature also declared that such an unresponsive bid "cannot be cured by the governing body." Ibid.
The argument advanced by the County and Lucas Brothers also overlooks the contextual use of other language contained in N.J.S.A. 40A:11-23.2. The Legislature used the same "pursuant to" language when it rendered a "guarantee" and surety "certificate" mandatory whenever required by the bid plans and specifications. Ibid. The statutory references that deal specifically with guarantees and certificates are not limited to public building construction. N.J.S.A. 40A:11-21 (dealing with guarantees) and N.J.S.A. 40A:11-22 (dealing with surety certificates) pertain not only to public building construction but also to construction involving structures, facilities and other improvements. If the Legislature intended to restrict subcontractor lists to public building bidding, we believe it would have attempted to differentiate subcontractor lists from the guarantee and surety certificate requirements.
The interpretation of N.J.S.A. 40A:11-23.2, urged by Lucas Brothers and the County, also conflicts with the "overall purpose of the 1999 amendments ... to improve the protections of the Local Public Contracts Law by imposing additional requirements upon bidders and new limitations upon the discretion of local contracting agencies." P & A, supra, 365 N.J.Super. at 177-78, 838 A.2d 520. If we were to incorporate the public building limitation into Section 23.2, we would lessen bidding requirements and enhance the discretion of local contracting entities, both consequences in direct conflict with the Legislative goals of the 1999 amendments.
Moreover, the result urged would allow the County to consider Lucas Brothers' failure to provide a subcontractor list as minor, immaterial, and waivable. That result conflicts with our prior treatment of such bidding defects. E.g., Gaglioti Contracting Inc. v. City of Hoboken, 307 N.J.Super. 421, 428, 704 A.2d 1301 (App. Div.1997)
Only "minor or inconsequential" conditions may be waived. Meadowbrook Carting Co. v. Borough of Island Heights, 138 N.J. 307, 314, 650 A.2d 748 (1994). Waivable conditions "by their nature may be relinquished without there being any possible frustration of the policies underlying competitive bidding." Terminal Constr. Corp. v. Atl. Sewerage Auth., 67 N.J. 403, 412, 341 A.2d 327 (1975). These immaterial, nonmandatory or waivable conditions may not be those "whose waiver is capable of becoming a vehicle for corruption or favoritism, or capable of encouraging improvidence or extravagance, or likely to affect the amount of any bid or to influence any potential bidder to refrain from bidding, or which are capable of affecting the ability of the contracting unit to make bid comparisons." Ibid.
In Gaglioti, which was decided before N.J.S.A. 40A:11-23.2 was adopted, we concluded that a list of subcontractors was material and nonwaivable. 307 N.J.Super. at 431, 704 A.2d 1301. We explained that the "list of subcontractors [requirement]... prevents a general contractor from negotiating or renegotiating with subcontractors after it is awarded the contract." Ibid. If the general contractor could negotiate with subcontractors after the contract was awarded, any savings achieved would not inure to the public. Governor's Reconsideration and Recommendation Statement, S. 1029, L. 1987, c. 48. Allowing such conduct " `would adversely affect competitive bidding by placing a bidder in a position of advantage.' " Gaglioti, supra, 307 N.J.Super. at 433, 704 A. 2d 1301 (quoting Tp. of River Vale v. *565 R.J. Longo Constr. Co., 127 N.J.Super. 207, 216, 316 A.2d 737 (Law Div.1974)(emphasis omitted)).
Moreover, the subcontractor list requirement "may have deterred others who would have bid, had they known that the condition would be waived." Id. at 433, 704 A.2d 1301. Thus, waiver of the requirement may also cause the bidding process to be unfair. Ibid.
In the absence of N.J.S.A. 40A:11-23.2, a list of subcontractors, when required by the contracting entity, would be material and nonwaivable. We cannot accept an argument that would reverse this result because of the adoption of N.J.S.A. 40A:11-23.2. Neither the County nor Lucas Brothers have advanced any persuasive reason to treat the bid in this case, involving several contractors including electrical, paving, and landscaping, differently from any other project including multiple contractors whether or not involving a public building.
Before the 1999 amendments, the general guidance to bidders was to assume that all of the specifications prepared by the contracting agency are material and that any bid must be submitted in strict accordance with the solicitation. See Meadowbrook Carting, supra, 138 N.J. at 324-25, 650 A. 2d 748 (citing L. Pucillo & Sons, Inc. v. Borough of New Milford, 73 N.J. 349, 356, 375 A.2d 602 (1977)). Bidders who deviated from the specifications did so at their peril.
The 1999 amendments were not crafted to alter this basic guidance. In fact, N.J.S.A. 40A:11-23.2 should heighten the care bidders must pay when assembling their bid. Bidders should cautiously attend to the requirements of N.J.S.A. 40A:11-23.2 and carefully double check to ensure that their bid includes each document requested in the bid solicitation. This is so because any mistake, such as that made by Lucas Brothers in this case, relating to the five itemized documents, will automatically be "fatal."
Lucas Brothers and the County advance several other arguments, challenging the award of the contract to Star of the Sea. Lucas Brothers argues that under Wasserman's Inc. v. Tp. of Middletown, 137 N.J. 238, 245, 645 A.2d 100 (1994), and Edwin J. Dobson, Jr., Inc. v. Rutgers, 157 N.J.Super. 357, 380, 384 A.2d 1121 (Law Div.1978), aff'd sub nom. Broadway Maint. Corp. v. Rutgers, 180 N.J.Super. 350, 434 A.2d 1125 (1981), aff'd 90 N.J. 253, 447 A.2d 906 (1982), the County was not obligated by its own requirement that a list of subcontractors be included in the bid. In Dobson, Rutgers believed it was subject to the public bidding laws requiring separate contractors for each trade when it prepared the bid documents. The Law Division found that it was not, in fact, bound by the public bidding laws and stated, "if the statute is not applicable, it is not controlled by it ... and such unit is free of its limitations." Dobson, supra, 157 N.J.Super. at 380, 384 A.2d 1121 (internal citations omitted). In Wasserman, the Supreme Court stated that "[a] municipality that advertises for public bids is not obligated to accept the low bid if the bidding statutes do not apply. Unless the public bidding statutes apply, their requirements do not control the award of bids." Supra, 137 N.J. at 245, 645 A.2d 100 (internal citations omitted).
Thus, Dobson and Wasserman provide that when the public bidding statute is not at all applicable to a project, but a governmental unit purports to comply with it anyway, the governmental unit is not controlled by the provisions of the inapplicable statute.
Here, assuming that not all aspects of N.J.S.A. 40A:11-16 apply, the public bidding statutes still govern this project. N.J.S.A. 40A:11-23.1 regulates "plans, specifications and bid proposal documents *566 [not only] for the erection, alteration or repair of a building, [but also for erection, alteration or repair of a] structure, facility or other improvement to real property." Therefore, Lucas Brothers' argument is misplaced.
At oral argument, the County claimed that its inclusion of the subcontractor list in the mandatory section of the bid submission checklist was a "mistake." However, there is no support in the record for this contention, and the argument was not presented to Judge Longhi. Hence, we refuse to consider it. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973).
The County also argues that Star of the Sea, to prevail, must establish that the County acted in bad faith or to eliminate an unfavorable bidder. In support of this argument, the County cites Princeton Disposal Serv., Inc. v. Tp. of N. Brunswick, 154 N.J.Super. 488, 381 A.2d 1220 (App.Div.1977). This decision is distinguishable because there the municipality rejected all bids in order to continue its current system of collecting refuse. Id. at 490, 381 A.2d 1220. Here, we deal only with whether Lucas Brothers was the lowest responsible bidder. When the bidder's noncompliance constitutes a nonwaivable irregularity, the contracting authority is without discretion to deal with it, and the bid must be rejected. Serenity Contracting Group, Inc. v. Fort Lee, 306 N.J.Super. 151, 159, 703 A.2d 352 (App.Div.1997). Consequently, the County's argument is inapposite.
Finally, the County argues that its award of the contract to Lucas Brothers was in the public interest. The "purpose of competitive bidding for local public contracts is ... not the protection of the individual interests of the bidders but rather the advancement of the public interest in securing the most economical result by inviting competition in which all bidders are placed on an equal basis." Tp. of River Vale, 127 N.J.Super. at 215, 316 A.2d 737. "Bidding statutes are for the benefit of the taxpayers and are construed as nearly as possible with sole reference to the public good." Terminal Constr. Corp., supra, 67 N.J. at 409-10, 341 A.2d 327.
Although the savings to the County by waiving the defect in Lucas Brothers' bid are not insignificant, that alone should not justify waiver of a material requirement. Meadowbrook Carting, supra, 138 N.J. at 325, 650 A.2d 748. Contracts are not to be awarded "simply to the lowest bidder, but rather to the lowest bidder that complies with the substantive and procedural requirements in the bid advertisements and specifications." Id. at 313, 650 A.2d 748. While the public may occasionally be harmed by failure to waive a bid requirement, "the overriding interest in insuring the integrity of the bidding process is more important than the isolated savings at stake." Ibid.
Affirmed.
NOTES
[1] We recently considered the meaning of this sentence in a similar, if not identical, checklist. See P & A Constr., Inc. v. Tp. of Woodbridge, 365 N.J.Super. 164, 168, 838 A.2d 520 (App.Div.2004). At that time, the sentence stated that failure to submit any of the documents in section B "may be a cause for the bid to be rejected." (emphasis added). In P & A, Judge Skillman concluded that the meaning of that phrase was "not that submission of those items is optional, but rather that failure to submit one of those items will result in rejection of the bid if the contracting agency finds the deficiency to be material." Id. at 171, 838 A.2d 520. Judge Skillman further suggested that the form, which was presumably prepared by the Division of Local Government Services, should be changed. Id. at 178, 838 A.2d 520. We have no cause to determine the precise meaning of the apparent change in the checklist from "may" to "will" in section B because this appeal relates exclusively to section A of the checklist.
[2] The fifth document is "[a] document provided by the contracting agent in the bid plans, specifications, or bid proposal documents for the bidder to acknowledge the bidder's receipt of any notice or revisions or addenda to the advertisement or bid documents."