**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0638-24

EARLE ASPHALT COMPANY,

    Plaintiff-Respondent,

v.

COUNTY OF GLOUCESTER,

    Defendant-Respondent,

and

SOUTH STATE INC.,

    Defendant-Appellant.

_____

> Argued March 5, 2025 – Decided June 3, 2025
>
> Before Judges Marczyk and Paganelli.
>
> On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-1067-24.
>
> John F. Palladino argued the cause for appellant (Hankin Palladino Weintrob Bell & Labov, PC, attorneys; John F. Palladino and Evan M. Labov, on the briefs).

Joseph T. Carney argued the cause for respondent County of Gloucester (Brown & Connery, LLP, attorneys; Joseph T. Carney and Jose A. Jimenez, on the brief).

Greg Trif argued the cause for respondent Earle Asphalt Company (Trif & Modugno LLC, attorneys; Greg Trif and Kyle H. Cassidy, of counsel and on the brief).

PER CURIAM

In this public bid matter, defendant South State, Inc. (South State), appeals from a trial court order and judgment declaring plaintiff Earle Asphalt Company (Earle) the lowest responsive and responsible bid, and restraining South State and defendant County of Gloucester (County) from contracting and performing under South State's bid. Undertaking our de novo review, and considering well-established law and applying a deferential standard, we reverse.

The facts underlying this matter are not in dispute. The County issued a notice that sealed bids would be received on July 30, 2024, for a County project. As relevant here, the bid stated:

ATTENTION

ALL PROSPECTIVE BIDDERS ARE REQUIRED TO BE **PREQUALIFIED** WITH THE NEW JERSEY DEPARTMENT OF TRANSPORTATION FOR THIS PROJECT

NOTICE OF CLASSIFICATION

2

. . . .

The work to be completed by the prospective bidder must exceed 50% of the value of the contract and the bidder must have submitted the corresponding proper NJDOT[1] notice of classification for prequalification of any work items to be performed by the bidder.

Further, the bid stated:

SECTION 102 – BIDDING REQUIREMENTS AND CONDITIONS

102.01 QUALIFICATION TO BID

. . . .

The Bidder is an individual, firm, or corporation submitting a bid for the advertised Work. The [County] will not accept bids from Bidders who fail to meet all of the following criteria:

1. The Bidder has been prequalified according to regulations covering the Classification of Prospective Bidders as required by N.J.S.A. 27:7-35.1, et seq.

. . . .

3. At the time the bid is delivered, the Bidder has an effective maximum and project ratings of not less than the amount of its bid.

---

[1] New Jersey Department of Transportation. Also referred to as "DOT."

. . . .

The work to be completed by the prospective bidder must exceed 50% of the value of the contract and the bidder must have submitted the corresponding proper NJDOT notice of classification for prequalification of any work items to be performed by the bidder.

In addition, the bid stated:

102.10 SUBMISSION OF BIDS

. . . .

The Bidder shall ensure delivery of its bid with all required components and attachments, including, but not limited to the following:

. . . .

3. For wholly State Funded contracts, acknowledgement of compliance with the registrations specified in 102.01.

. . . .

Prospective bidders are required to submit a NJDOT Notice of Classification which demonstrates the Contractor has a current pre-qualification rating of not less than their respective bid. The Notice of Classification must be submitted with the bid documents. Bids submitted without a proper Notice of Classification may be considered non-responsive.

The bid also included a construction bidders checklist that listed sixteen documents. The bid stated the "[f]ailure to submit the . . . documents with this

bid is mandatory cause for the bid to be[]rejected." The DOT Notice of Classification (Notice) was not listed on the checklist.

On the bid due date, Earle submitted a bid for the project. Earle did not provide the Notice with its bid. Earle's bid amount, $707,513.13, was less than South State's bid amount, $745,546.15, by $38,033.02.

On August 7, 2024, the County wrote to Earle and advised "unfortunately your [bid] has been rejected for the following reason: Contractor did not provide [the Notice] as required in [the] specification."

On August 19, 2024, Earle, through counsel, responded to the County and contended "[t]he County must award the . . . [c]ontract to Earle as the lowest responsive bidder." Counsel's letter asserted:

> That Earle's bid did not include its current pre-qualification rating is of no moment because that document was not mandatory. Indeed, the Construction Bidders Checklist does not identify the pre-qualification rating as a mandatory document. Likewise, the language in the Solicitation referencing the pre-qualification rating indicates that a failure to include the document with a bid is not a basis for automatic rejection. In other words, the pre-qualification rating is non-mandatory and, thus, waivable.
>
> Even if the pre-qualification rating was a mandatory document (which it was not), the putative defect is waivable as a matter of law. . . . This is especially true because Earle was prequalified by the

5

NJDOT at the time of its bid submission, and the absence of such certificate in its bid cannot change this fact.

On August 20, 2024, Earle's counsel provided the County with Earle's Notice.

The Notice indicated Earle was prequalified at the time of its bid.

On the same day, the County, through its counsel stated it

disagree[d] that . . . Earle['s] . . . bid was fully responsive.    Our position is that the County is compelled to award the contract to South State . . . .

The [Notice] is not an immaterial waivable term. It is required in all applicable County bid specifications and this requirement is featured prominently on the title pages.  It states very clearly that the pre-qualification must be included.  The specifications also cite Section 102 of the standard DOT bid specs that apply to this bid.  If a bidder did not have such a confirmed DOT pre-qualification, the firm is not legally authorized to perform the work.  That alone, unequivocally, means the term is material.  . . . In other words, without such a pre-qualification, the bidder's bid cannot be considered and/or must be rejected just as it is with DOT bids awarded by the Commissioner of the DOT. . . . It can hardly be immaterial and waivable if a bidder is[ no]t qualified by the DOT to perform such work.  To deviate from that clear requirement could jeopardize the County's position with the DOT and ultimately harm the County and its taxpayers.

Secondly, all such bids in [the] County have been required to include DOT pre-qualification.  If it were not material and waivable, it would not be a required part of a responsive bid.  Accepting your position would uneven the playing field of bidders who complied with

6

the specifications and completed the required step of providing the pre-qualification with their bid. Waiving this required pre-qualification certification would impermissibly give your client a competitive advantage over other bidders who did submit the required pre-qualification, which serves one of the chief purposes of public bidding. . . .

The fact is both the DOT and the County consider a timely receipt of the pre-qualification as a material term and accordingly the County's position is that it would not be appropriate to waive it and will not be withdrawing its award letter to South State . . . .

On August 21, 2024, the County passed a resolution to award the contract for the project to South State.

Two days later, Earle filed an action in lieu of prerogative writs. The same day, the trial court entered an order to show cause. The court temporarily enjoined and restrained the County and South State from entering into a contract or performing work under a contract.

The trial court heard the parties' oral arguments on the return date of the order to show cause. On the same day, the court issued an oral opinion. The court first considered whether the absence of the Notice was "waivable in the bid documentation." The court observed the bid language stated, the Notice "shall be submitted" "several times throughout the document."

A-0638-24

Next, the trial court addressed what would happen in the event a bidder did not submit the Notice. The court found "the very language of the bid documents ma[d]e[] it clear that this [wa]s a potentially waivable document," the "very essence" of "the language in the bid s[tated] the[ County] may waive it, [or] they may not." The court noted "compelling . . . language [in the bid] that was very clear with regards to [other] mandatory documents, [and] that they were clearly not waivable."

Further, considering it determined the absence of the Notice was "a potentially waivable document," the court applied the River Vale[2] two-prong analysis to determine whether Earle's failure to provide the Notice was "material and nonwaivable."

First, the trial court considered whether the County had assurance that Earle would perform an awarded bid. The court held the County had no obligation to conduct a search to determine if Earle had the Notice, but concluded that as of August 20, when Earle "submitted the appropriate documentation showing [it] actually" had the "[N]otice," "the County had its

---

[2] See Twp. of River Vale v. R.J. Longo Constr. Co., 127 N.J. Super. 207 (Law Div. 1974).

assurances." The court stated it was important the Notice "was valid on the date that the bid was opened" although "submitted after the fact."

Second, the trial court considered whether Earle's omission of the Notice was "of such a nature that its waiver would adversely affect competitive bidding." The court noted both Earle and South State had the Notice "on the day the bid was opened." As to Earle, the court found "[t]his was not a situation where [it was] able to tender a more affordable bid because they did[ no]t have something in place." Therefore, the court concluded, Earle's omission was "nothing more than a technical omission" and "there[ wa]s no competitive advantage."

The trial court assessed South State's argument that Earle's omission allowed it to "walk away"—"choose not to proceed with the contract." However, the court considered the argument "speculat[ive]" and it could "only deal with the facts that [we]re before" it. The facts were "the document was turned over" and "existed at the time of the bid opening." "So there [wa]s no walking away at this point."

Thus, after engaging in the River Vale analysis, the trial court found "the bid defect was not material . . . and [wa]s, waivable." The court concluded

A-0638-24

Earle's omission was "nothing more than a technical omission" and Earle provided the Notice "in a reasonable time period."

Next the trial court considered whether "the County c[ould] reasonably exercise its discretion to . . . award the bid to South State and not to" Earle. The court stated, "[l]egally [the County] absolutely c[ould], assuming that they . . . do so for sound business purposes." The court stated it "would have to find that . . . [the County's] action to award . . . to South State was arbitrary, capricious, and unreasonable and not based upon sound business purposes."

The trial court found "[t]he County was . . . provided a fully compliant bid." The County received the DOT Notice "on the 20th of August[,] that showed . . . [Earle] . . . could properly perform under th[e] contract." Therefore, the court stated, it did not "see anything that would suggest [a] valid, sound business judgment . . . by paying $50,000 more." Further, although the County "did not receive the appropriate documentation at the bid [opening, it] . . . received it on August 20th," and therefore it was "arbitrary, capricious, and unreasonable to" reject Earle's bid "and enter[] into a contract with" South State.

The trial court noted its decision only concerned the "return on an order to show cause." It stated its order was "not . . . a final determination on the

A-0638-24

case." Therefore, the court conducted a Crowe[3] analysis regarding Earle's request for temporary relief and granted that remedy. The court scheduled the matter for a case management conference to provide the attorneys time to confer with their clients and consider their next steps.

The parties returned to court for the case management conference. At the conference, the parties agreed upon a schedule to permit South State to file a motion for reconsideration and for Earle to file a cross-motion to reduce the temporary restraints to a final judgment.

On the return date of the parties' motions, the trial court heard their oral arguments regarding South State's motion for reconsideration. Defendants did not oppose Earle's cross-motion for final judgment. The court stated the motion for reconsideration was "[ninety-nine] percent" a re-argument of the parties' prior arguments. Therefore, the court denied the motion for reconsideration.

Nevertheless, the trial court addressed two issues to clarify its earlier decision. The first was that "responsiveness to the bid need[ed] to be evaluated [as of] the date of the bid opening" despite, that "much of the [court's] evaluation

---

[3] In Crowe v. De Gioia, 90 N.J. 126, 132-35 (1982), the New Jersey Supreme Court provided the traditional and fundamental principles for a court's consideration of preliminary relief.

went to what was submitted as of August . . . 20th." The second issue pertained to the County's assurance of Earle's performance and the court stated "the critical document was valid as of the bid opening date." In addition, the court denied South State's request for a remand to the County for further consideration of the bid.

After South State filed its Notice of Appeal, we granted a stay of the trial court's order and judgment, but denied the request for a remand to the County.

On appeal, South State argues the trial court erred in applying the River Vale test and by not remanding to the County for further consideration.[4] The County contends the Notice was a mandatory document and the judge misapplied River Vale. Earle argues the trial court correctly found the County abused its discretion in denying its bid. In addition, Earle contends that we should not consider the County's arguments that are merely "duplicative" of South State's arguments because the arguments are "untimely" given the County's failure to file a notice of appeal or cross-appeal.[5]

---

[4] Given our opinion, we do not consider the merits of the remand argument.

[5] "Ordinarily, a respondent must cross-appeal in order to obtain relief from a judgment." N.J. Div. of Youth & Fam. Servs. v. B.G.S., 291 N.J. Super. 582, 586 n.2 (App. Div. 1996). Because the County seeks the same relief as South State and its argument mirrors South State's, the argument is considered.

II.

Our review of the trial court's order is de novo.  See Ernest Bock & Sons-Dobco Pennauken Joint Venture v. Twp. of Pennsauken, 477 N.J. Super. 254, 263 (App. Div. 2023) ("We review the trial court's legal conclusions and issues of applicability and interpretation of the public contract . . . law[] de novo." (citing In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 17 (2020))).

We apply deference to "governmental decisions in bidding cases."  Ibid. Our standard of review regarding "whether a bid on a local public contract conform[ed] to specifications . . . is whether the decision was arbitrary, unreasonable[,] or capricious."  Ibid.  (quoting In re Protest of Award of On-Line Games Prod. & Operation Servs. Cont., Bid No. 95-X-20175, 279 N.J. Super. 566, 590 (App. Div. 1995)).  Therefore, when "a public entity's decision is grounded rationally in the record and does not violate the applicable law, it should be upheld."  Ibid.

Under the Local Public Contracts Law (LPCL), N.J.S.A. 40A:11-1 to -60:

> Every contract awarded by [a county] for the provision
> or performance of any goods or services, the cost of
> which in the aggregate exceeds the bid threshold, shall
> be awarded only by resolution of the governing body of
> the contracting unit to the lowest responsible bidder
> after public advertising for bids and bidding therefor
> . . . .

[N.J.S.A. 40A:11-4(a).]

"The purpose of the [LPCL] is to 'secure for the public the benefits of unfettered competition.'" Meadowbrook Carting Co. v. Borough of Island Heights & Consol. Waste Servs., 138 N.J. 307, 313 (1994) (quoting Terminal Constr. Corp. v. Atl. Cnty. Sewerage Auth., 67 N.J. 403, 410 (1975)). "The statutes authorizing competitive bidding accomplish that purpose by promoting competition on an equal footing and guarding against 'favoritism, improvidence, extravagance and corruption.'" Ibid. (quoting Twp. of Hillside v. Sternin, 25 N.J. 317, 322 (1957)).

"[I]n New Jersey[,] . . . publicly advertised contracts must be awarded to 'the lowest responsible bidder.'" Ibid. (quoting N.J.S.A. 40A:11-6.1). However, the New Jersey Supreme Court "has interpreted that requirement to mean that the contract must be awarded not simply to the lowest bidder, but rather to the lowest bidder that complies with the substantive and procedural requirements in the bid advertisements and specifications." Ibid. This mandate stands despite "additional cost to the public." Id. at 325.

"Strict compliance is required," and "generally [there is no] discretion to accept a defective bid." Id. at 314. "In this field it is better to leave the door

14

tightly closed than to permit it to be ajar." Ibid. (quoting Sternin, 25 N.J. at 326).

Therefore, "all bids must comply with the terms imposed, and any material departure invalidates a nonconforming bid." Ibid. "[M]aterial conditions contained in bidding specifications may not be waived." Ibid. (quoting Terminal, 67 N.J. at 411). "However, minor or inconsequential discrepancies and technical omissions can be the subject of waiver." Ibid. (citing Terminal, 67 N.J. at 411).

"[T]he test of materiality has been reduced to [a] . . . two-prong analysis." Id. at 315 (second alteration in original) (quoting L. Pucillo & Sons, Inc. v. Twp. of Belleville, 249 N.J. Super. 536, 547 (App. Div. 1991)). The River Vale analysis considers:

> [F]irst, whether the effect of a waiver would be to deprive the municipality of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements, and second, whether it is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition.
>
> [Ibid. (quoting Palamar Constr., Inc v. Twp. of Pennsauken, 196 N.J. Super. 241, 255 (App. Div. 1983) (quoting River Vale, 127 N.J. Super. at 216)).]

Timing is important in the application of the test because "only material elements of a bid cannot be supplied after the bids are opened." On-line Games, 279 N.J. Super. at 600. In other words, a bidder cannot seek to cure a defective bid with the submission, post-bid, of material items.

### III.

We first consider whether the County's bid required a bidder's Notice to be included with its bid. The bid specification language stated the Notice was "required," "must," and "shall" be submitted with the bid. The County's use of these mandatory words can lead to no other conclusion than that Notice was required to be submitted with the bid.

The County's use of the word "may" in describing what could happen in the event of a bidder's failure to comply with the required submittal does not detract from the requirement itself. It is unlikely the County would give bidders the option to submit a Notice when the bid could not be awarded to a bidder that did not have it. See P & A Constr., Inc. v. Twp. of Woodbridge, 365 N.J. Super. 164, 167-68 (App. Div. 2004). The County could not evaluate or award a bid without proof that the bidder had the requisite Notice.

In P & A, we considered bid language that "stated: Failure to submit the following documents is a mandatory cause for the bid to be rejected." 365 N.J.

Super. at 167-68. Included in the list of documents was the requirement to provide "a certified financial statement." Id. at 167. The bidder did not provide the "certified financial statement" with its bid. Id. at 168.

We stated "the import of the statement that failure to submit one of the items [from the] list[] . . . 'may be cause for the bid to be rejected' [wa]s not that submission of those items [wa]s optional, but rather that failure to submit one of those items w[ould] result in rejection of the bid if the contracting agency f[ound] the deficiency to be material." Id. at 171. Therefore, in P & A, despite the "unequivocal directive," id. 170, we concluded the document itself was mandatory—"required [of] all bidders to submit . . . with their bids." Id. at. 171. Similarly, here we conclude the inclusion of a bidder's Notice in the bid was mandatory.

Next, we consider whether a bid, without the required Notice, necessitated bid rejection. Again, we turn to the bid language, "[b]ids submitted without a proper Notice . . . may be considered non-responsive." This language is contrasted with the language used on the construction bidders checklist that stated: "Failure to submit the . . . documents with this bid is mandatory cause for the bid to be rejected." The Notice was not included on the checklist.

Therefore, by the terms of the bid specification, a failure to include the mandatory Notice would not necessarily result in rejection.

Therefore, we turn to the application of the River Vale test to determine whether Earle's omission of the Notice was material. At the time of the bid, the County had no assurance Earle could or would enter into or perform according to the bid because Earle failed to provide the Notice. Indeed, in the absence of the Notice, the County could not award the bid to Earle. It is of no moment that the County could have conducted its own search to determine if Earle had the classification—we find no such requirement—or that Earle had the classification but failed to submit the Notice. Instead, at the time of the bid, and in the absence of the Notice, the County had no assurances regarding Earle. Under these circumstances, the omission of the Notice was material.

In addition, to allow Earle's late submission "would undermine the stability of the public-bidding process." Meadowbrook, 138 N.J. at 321. In Meadowbrook, the New Jersey Supreme Court recognized a bidder could "decline" or "cancel" an award merely by refusing to provide the required documents. Ibid. In addition, the Court stated, "that the . . . bid bond [could be retained did] not necessarily assure that the low bidder w[ould] enter into or perform the contract." Ibid. On the contrary, "[i]f the low bidder determine[d]

that its bid [wa]s too low and that its prospective loss on the contract exceed[ed] the amount of its bid bond, that low bidder may decide to forfeit its security rather than incur a greater loss by performing the contract." Ibid. These similar concerns are present here. Earle could have similarly refused to provide the Notice for any number of reasons and the County's retention of Earle's bid bond offered no solace.

We add that the analysis does not require improper speculation. Nevertheless, a court need not find competitive bidding was "actually affected," only "whether it would" be "adversely affect[ed]." Gaglioti Contracting, Inc. v. City of Hoboken, 307 N.J. Super. 421, 433 (App. Div. 1997). In Gaglioti, we considered what "could have" happened, despite accepting "the representation that it did not." Ibid.

Moreover, we emphasize the extended time between the bid opening and Earle's submission of the Notice. The County opened bids on July 30, 2024, and did not receive Earle's Notice until August 20, 2024. We conclude the twenty-one-day delay between bid opening and the submission of the Notice was not reasonable. The extended time created instability in the bidding process and led to the same concerns raised by the Court in Meadowbrook.

This is not a situation where a bidder's "qualification statement was omitted due to a clerical error and was submitted to the . . . authorities one and one-half hours after the bids were opened." Palamar, 196 N.J. Super. at 254. Under those circumstances, we concluded "[t]he failure . . . to submit a contractor's qualification statement with its bid in th[at] instance neither deprive[d] the Township . . . of its guarantee that the contract w[ould] be performed nor threaten[ed] the integrity of the policies behind . . . competitive bidding." Id. at 256. Because of the extended time here, we cannot reach the same conclusion. We conclude the County did not abuse its discretion in rejecting Earle's bid.

Reversed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division