NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3236-15T2

SUBURBAN DISPOSAL, INC. and
JAMES CAMPBELL,

 Plaintiffs,

and

GILBERTO PEREZ,

 Plaintiff-Appellant,

v.

CITY OF CAMDEN and WASTE MANAGEMENT
OF NEW JERSEY, INC.,

 Defendants-Respondents,

and

GOLD MEDAL ENVIRONMENTAL OF NJ, INC.,

 Defendant.
______________________________________

 Argued May 24, 2017 – Decided July 26, 2017

 Before Judges Accurso, Manahan and Lisa.

 On appeal from Superior Court of New Jersey,
 Law Division, Camden County, Docket No. L-
 1781-15.

 Richard D. Trenk argued the cause for
 appellant (Trenk, DiPasquale, Della Fera &
 Sodono, PC, attorneys; Mr. Trenk, of counsel
 and on the brief; Mark Y. Moon, on the
 brief).

 Jason J. Asuncion, Assistant City Attorney,
 argued the cause for respondent City of
 Camden.

 Maeve E. Cannon argued the cause for
 respondent Waste Management of New Jersey,
 Inc. (Stevens & Lee, PC, attorneys; Ms.
 Cannon, of counsel and on the brief; Ryan P.
 Kennedy and Wade D. Koenecke, on the brief).

PER CURIAM

 There is only one issue in this competitive bidding dispute

brought by plaintiff Gilberto Perez1 under the Local Public

Contracts Law, N.J.S.A. 40A:11-1 to -51: whether Waste

Management of New Jersey, Inc.'s (WMNJ) reliance on its parent's

consolidated financial statement satisfied Question No. 13 of

the City of Camden's bid specification, which required

submission of "the financial statement or balance sheet of the

bidder." Because we agree with Judge Silverman Katz that WMNJ's

1
 The notice and amended notice of appeal list both Suburban
Disposal, Inc. and Perez as plaintiffs-appellants. Suburban was
an unsuccessful bidder for this contract. Camden rejected
Suburban's bid as non-conforming, a decision Suburban
unsuccessfully challenged in a prior matter as explained by
Judge Silverman Katz in her written decision. The judge
subsequently determined Suburban was without standing to
challenge the award to WMNJ in this matter, see J. Turco Paving
Contractor, Inc. v. City Council of City of Orange, 89 N.J.
Super. 93, 103 (App. Div. 1965), leading to the substitution of
Perez as plaintiff in this case. Appellant's brief refers to
Perez as the only plaintiff-appellant.

 2 A-3236-15T2
response to Question No. 13 fully conformed to the

specification, we affirm, substantially for the reasons

expressed in the judge's April 7, 2016 written decision.

 The essential facts are undisputed and easily summarized.

Camden solicited bids in 2014 for a new solid waste and

recyclable materials collection contract. Bidders were required

to complete a questionnaire setting forth their experience and

qualifications and were warned that failure to complete the form

or provide the required information would result in rejection of

the bid. Bidders were also advised that "[e]ach document in the

bid proposal must be properly completed in accordance with

N.J.A.C. 7:26H-6.5," and that "[a]ny Bid Proposal that does not

comply with the requirements of the bid specifications and

N.J.A.C. 7:26H-6.1 et seq., shall be rejected as non-

responsive."

 Three solid waste collectors bid on the new contract;

Suburban Disposal, Inc., Gold Medal Environmental of NJ, Inc.

and WMNJ, the holder of the expiring collection contract.

Camden rejected Suburban's low bid as non-conforming and awarded

the contract to Gold Medal, the next lowest bidder. Suburban

filed suit challenging the award to Gold Medal and also asserted

that WMNJ's bid contained a material, non-waivable defect by

omitting the financial statements or balance sheets required by

 3 A-3236-15T2
Question No. 13. Judge Silverman Katz upheld Camden's rejection

of Suburban's bid but also concluded Gold Medal's bid was

materially defective, precluding the award of the contract to

it.

 As to WMNJ, the judge determined that the language of the

questionnaire included in Camden's bid specifications was

identical to the Uniform Bid Specifications (UBS) form for

municipal waste collection contracts promulgated by the New

Jersey Department of Environmental Protection in N.J.A.C. 7:26H-

6.1 to -6.18, the Solid Waste Utility Regulations, Appendix A,2

with the exception of Question No. 13. Appendix A, which is

found after N.J.A.C. 7:26H-6.18, requires that "[a]ll requests

for bid proposals for municipal solid waste collection services

shall conform to the form contained herein . . . and [t]he forms

provided are mandatory."

 UBS form Question No. 13 states:

2
 The Solid Waste Utility Regulations were adopted pursuant to
the Solid Waste Utility Control Act, N.J.S.A. 48:13A-1 to -13,
to regulate the economic aspects of the solid waste industry and
contain the general requirements applicable to companies engaged
in the collection or disposal of solid waste in the State. See
47 N.J.R. 721(a) (April 6, 2015). N.J.A.C. 7:26H-6.1 provides:
"The purpose of this subchapter is to establish uniform bidding
practices for municipal solid waste collection contracts in
order to promote competition among solid waste collectors,
protect the interests of consumers and to enhance the Department
[of Environmental Protection]'s ability to adequately supervise
the existence of effective competition."

 4 A-3236-15T2
 13. Supply the most recent Annual Report, as
 required to be filed with the Department of
 Environmental Protection. If the company
 has recently entered the collection business
 and has not been required to file an annual
 report, a financial statement for the most
 recent year, which includes at a minimum the
 bidder's assets, shall be submitted, or a
 financial statement for the most recent year
 from the bidder's parent company shall be
 submitted, provided the parent company's
 financial statement lists the assets of the
 bidder's company separately.

 Question No. 13 in Camden's questionnaire stated:

 13. Supply the most recent annual report, as
 required to be filed with the Department of
 Environmental Protection, and the financial
 statement or balance sheet of the bidder,
 certified by a certified public accountant.

Assessing the differences between the two, the judge noted "the

City add[ed] the requirement of financial statements or balance

sheets in addition to annual reports, and remove[d] certain

provisions pertaining to the financial records of new and

subsidiary companies."

 Having acknowledged the differences, the judge nevertheless

rejected Suburban's contention that "the consolidated 2013

Annual Report of WMNJ's parent company, Waste Management, Inc.,

is deficient." The judge wrote that asking "the bidder to

'[s]upply the most recent annual report, as required to be filed

with the [DEP],'" does not imply "that all subsidiaries must

file individual reports." Noting several examples of the

 5 A-3236-15T2
Legislature having permitted the submission of consolidated

financial statements, including in the Solid Waste Utility

Control Act, N.J.S.A. 48:13A-7.16a, the judge observed that

"[p]ractically speaking, consolidated financial reports and

other documents are convenient and, undoubtedly at times,

necessary to present an efficient yet accurate picture of an

entity's or entities' financial status(es)." Further, the court

noted that nowhere in the bid specifications were consolidated

financials forbidden.

 Acknowledging that Camden's Question No. 13, "unmistakably

requires both an annual report and either a financial statement

or balance sheet to be certified by a CPA and submitted with the

bid proposal," the judge found "WMNJ fulfilled this request by

providing the consolidated financial statements which were part

and parcel to its Annual Report, the latter of which is also

acceptable." The judge concluded that although Suburban was

correct in noting

 the question asks for the bidder's financial
 statement or balance sheet, the consolidated
 documents provided are, for all intents and
 purposes, WMNJ's financial statement. WMNJ,
 as a subsidiary, does not prepare its own
 particular annual reports, financial
 statements or balance sheets. [Suburban]
 has cited no authority demonstrating the
 impropriety of this common practice and,
 consequently, it cannot be said that WMNJ

 6 A-3236-15T2
 violated the bid specifications in this
 regard.

 Notwithstanding her rejection of Suburban's contention that

WMNJ's response to Question No. 13 rendered its bid non-

conforming, which was the sole objection raised as to WMNJ's

bid, the judge did not order the contract awarded to WMNJ.

Instead she noted that because Camden had awarded the contract

to Gold Medal, it had not "thoroughly analyze[d] WMNJ's bid" for

conformity. Under those circumstances, the judge declined to

"simply foist it upon the taxpayers of Camden absent full and

fair review by the City," and instead remanded the matter to the

City to "either award the Contract to WMNJ, or rebid it."

 After analyzing WMNJ's bid on remand, Camden concluded it

was "compelled under law to award the contract to . . . [WMNJ],"

because WMNJ submitted "the remaining lowest responsible

responsive bid," WMNJ's bid did "not substantially exceed the

City's cost estimates or appropriation for this bid

procurement," and there was "no other basis upon which a rebid

would be legally justified." The City considered Suburban's

arguments as to WMNJ's response to Question No. 13 and

"reaffirm[ed] its original finding that WMNJ's submitted

financial statements and balance sheets in response to

 7 A-3236-15T2
Questionnaire Question No. 13 are responsive, satisfactory, and

acceptable." The City declared:

 The financial statements submitted by
 WMNJ were contained in WMNJ's ultimate
 parent corporation, Waste Management,
 Inc.'s, 256 page "2013 Annual Report," which
 is acceptable to the City . . . . WMNJ's
 submitted Annual Report of its parent,
 including its financial statements, were
 produced by the CPA firm of Ernst & Young
 LLP, Houston, TX, Annual Report, SEC Form
 10-K . . . which is acceptable to [the]
 City.

 Camden was also satisfied that WMNJ had fully disclosed

that it is a wholly-owned subsidiary of Waste Management

Holdings, Inc., which, in turn, is a wholly-owned subsidiary of

Waste Management, Inc. The City

 accept[ed] the inter-related corporate
 structure fully disclosed by WMNJ in which
 it is a material subsidiary of its ultimate
 parent corporation, Waste Management, Inc.
 Hence, WMNJ's ultimate corporate parent's
 reported consolidated financial statements
 and balance sheets – which include WMNJ's
 financials per its parent's express
 reporting requirements and SEC Form-10K
 representations – are acceptable to the City
 as the equivalent of WMNJ's financial
 statements and balance sheets.

 Finally, Camden concluded that the City was further

 assured that WMNJ's broad inclusion in the
 consolidated financial reporting of a
 substantial nationally-based solid waste
 collections company (ranked 207 in the
 "Fortune 500" listing in 2014), without any
 negative notation, ensures that WMNJ has the

 8 A-3236-15T2
 financial ability, stability, and
 accountability to its ultimate parent
 corporation to enter into and perform the
 contract for the City. To this point, Waste
 Management, Inc.'s, "2013 Annual Report,"
 Annual Report, SEC Form 10-K, "Financial
 Assurance," pg. 10 reports on its financial
 assurances for municipal contracts provided
 via surety bonds issued by its consolidated
 subsidiaries; affiliated entity (parent
 corporation's wholly-owned insurances
 subsidiary); or third-party surety companies
 (for WMNJ in this bid procurement, Western
 Surety Company).

 Following Camden's award of the contract to WMNJ, Suburban

filed this second action seeking to invalidate the award and

compel the City to reject WMNJ's bid and rebid the contract.

Suburban also sought to restrain the City from executing a

contract with WMNJ. Judge Silverman Katz denied Suburban's

request for temporary restraints. We denied Suburban leave to

file an emergent application appealing that ruling, as did a

justice of the Supreme Court, noting Suburban had "failed to

establish entitlement to a single Justice stay based on . . .

review of the parties' submissions, and the trial court's

determinations thus far in connection with the award of this

service contract."

 Following the substitution of Perez as plaintiff and a

plenary hearing, the judge dismissed the second amended

complaint with prejudice and affirmed Camden's award to WMNJ.

 9 A-3236-15T2
She characterized plaintiff's arguments as two-fold. "First, he

argues the City acted arbitrarily, capriciously, and

unreasonably in treating the WMI Annual Report as WMNJ's

financial statement, which constitutes a material and fatal

defect. Second, Plaintiff asserts that the bid specifications

issued by the City were erroneous in that they did not conform

to the applicable Uniform Bid Specifications." The judge

rejected both arguments.

 The judge readily accepted plaintiff's assertion that the

bid specification requiring submission of the bidder's financial

statement or balance sheet was material under the two-prong test

developed by Judge Pressler in Township of River Vale v. R.J.

Longo Construction Co., 127 N.J. Super. 207, 216 (Law Div.

1974), and adopted by the Supreme Court in Meadowbrook Carting

Co. v. Borough of Island Heights, 138 N.J. 307, 315 (1994). She

noted, however, that the question of materiality "arises only

after it is determined that a bid deviates from the bid

specifications." See Weidner v. Tully Envtl., Inc., 372 N.J.

Super. 315, 323 (App. Div. 2004).

 Incorporating the findings from her prior decision, the

judge found plaintiff failed to establish WMNJ's bid deviated

from the specifications, rejecting his argument that because

"neither the bid specifications nor any statute explicitly

 10 A-3236-15T2
allows a subsidiary to rely upon its parent's consolidated

financial statements, and the [Waste Management, Inc.] Annual

Report did not specify WMNJ's assets, it was unreasonable for

the City to rely upon the [Waste Management, Inc.] Annual

Report." Specifically, the judge found

 the City did not act arbitrarily,
 capriciously, or unreasonably in treating
 [Waste Management, Inc.'s] 2013 Annual
 Report, which contains the consolidated
 financial statements of WMNJ, as sufficient
 to satisfy the requirements of the bid
 specifications. The [Waste Management,
 Inc.] Annual Report did not include the
 individualized financial statement or
 balance sheets of [Waste Management, Inc.];
 it incorporated as part of its consolidated
 figures, among other things, the 2013
 financial information of WMNJ and its
 immediate parent, [Waste Management]
 Holdings.

 The judge, again noting that "the law in many contexts

contemplates the submission of consolidated financial statements

by subsidiaries," observed that the City

 was aware, through disclosures in the bid
 documents, that WMNJ is a subsidiary of
 [Waste Management] holdings, which is a
 subsidiary of [Waste Management, Inc.]. The
 City was also aware that WMNJ does not have
 a separate audited financial statement and
 instead only had a consolidated statement
 which contained its financial information.
 It was therefore reasonable for the City to
 rely upon the consolidated financial report
 when it, indisputably, contained WMNJ's

 11 A-3236-15T2
 fiscal data and was the only such available
 report. [(Footnotes and internal citations
 omitted).]

 The judge also explained that Camden's reliance on Waste

Management, Inc.'s consolidated financial statement was

reasonable in light of "the bid bond provided by WMNJ," which

"assured that [the City] would be protected by the performance

bond required by the bid specifications and supplied by WMNJ."

Although noting the recent amendment to the Local Public

Contracts Law, L. 2014, c. 52, § 1, which "prohibits requiring

bidders to submit a financial statement if a bid bond is also

required by the specifications" was inapplicable because the bid

was advertised five weeks before the amendment took effect, the

judge also found it was

 difficult to support the position that the
 City acted arbitrarily or capriciously by
 relying upon a consolidated financial
 statement that incorporated WMNJ's
 financials when it is now in fact prohibited
 by law from even asking for a financial
 statement if it requests a bid bond, which
 the City did and which WMNJ supplied.

 The judge rejected plaintiff's second argument, that

Question No. 13 was void because it varied from the UBS Question

No. 13, as untimely under the forty-five-day rule, R. 4:69-6(a),

and N.J.S.A. 40A:11-13, which permits a challenge to the

specifications only prior to the opening of the bids. See Jen

 12 A-3236-15T2
Elec., Inc. v. Cty. of Essex, 197 N.J. 627, 642-44 (2009). The

judge explained, however, that even a timely challenge on that

ground would have been unavailing. Acknowledging that Camden's

Question No. 13 was not identical to the UBS form, the judge

found "the City's version adequately fulfills the intent of the

[Local Public Contracts Law]." She explained:

 There can be no doubt that Question 13 as
 phrased in the bid specification promotes
 "unfettered competition" in the procurement
 of public contracts. All of the bidders who
 bid on the Contract and complied with the
 City's version of Question 13 were "on an
 equal footing" and there was no risk of
 "favoritism, improvidence, extravagance, or
 corruption." [(Citations omitted).]

 Furthermore, even if the City had used
 the UBS version of Question 13, WMNJ would
 have been in compliance, and its bid would
 still be the only responsive and responsible
 bid. WMNJ has been a fully licensed solid
 waste collection and disposal company since
 at least March 1998. No party has disputed
 that WMNJ, as part of its bid, attached its
 2013 DEP report. Under the UBS, that would
 be sufficient. There would be no issue and
 no lawsuit. [(Citations omitted).]

 Perez appeals, reprising the arguments he made to the trial

court. Having read the record and considered those arguments,

and mindful that the "bidding statutes exist for the benefit of

taxpayers, not bidders, and should be construed with sole

reference to the public good," National Waste Recycling, Inc. v.

Middlesex County Improvement Authority, 150 N.J. 209, 220

 13 A-3236-15T2
(1997), we affirm, substantially for the reasons expressed by

Judge Silverman Katz in her two thoughtful and thorough written

opinions in this matter. We add only the following.

 The solid waste industry in New Jersey is pervasively

regulated as a public utility. Id. at 219-22 (discussing

industry's history). Bidding practices for municipal solid

waste collection contracts are thus likewise subject to

legislatively mandated oversight at the State level.

Competition is encouraged within "'a regulated framework.'" Id.

at 221 (quoting In re Application of Borough of Saddle River, 71

N.J. 14, 22 (1976)). Both N.J.S.A. 40:66-4a, which grants the

authority to municipalities to enter into solid waste collection

contracts, and the Local Public Contracts Law, N.J.S.A. 40A:11-

13, require that bid specifications for municipal solid waste

contracts "shall conform" to the Uniform Bid Specifications

established by N.J.S.A. 48:13A-7.22.

 As we have noted, the Uniform Bid Specifications were

adopted "to promote competition among solid waste collectors,

protect the interests of consumers and to enhance the [DEP]'s

ability to adequately supervise the existence of effective

competition." N.J.A.C. 7:26H-6.1. Every municipality that

provides solid waste collection services "shall conform" to

these requirements, N.J.A.C. 7:26H-6.2(b), and a bidder's

 14 A-3236-15T2
failing "to comply with these requirements shall result in the

immediate disqualification of the bid proposal," N.J.A.C. 7:26H-

6.5(a).

 Given this regulatory framework, we agree with the trial

court that Camden's Question No. 13 must be read and interpreted

within the context of UBS Form Question No. 13. Reading the two

together makes clear there is no distinction intended between a

bidder and its corporate parent. In UBS Question No. 13, even a

company that recently entered the collection business can rely

on the financial statement of its corporate parent; the only

requirement for such companies is that the documents list the

bidder's assets separately.

 By contrast, there is no prohibition against an established

collection company submitting its parent's financial statements,

and no additional requirement for its using those documents.3

Accordingly, we agree that WMNJ's submission of its DEP-approved

Certificate of Public Convenience and Necessity Annual Report

for Solid Waste Collectors, which included WMNJ's financial

statement, and Waste Management, Inc.'s Annual Report, which

3
 We note, as did the trial court, that the Solid Waste Utility
Contract Act states that the DEP "may compel any person engaged
in the business of solid waste collection or otherwise providing
solid waste collection services to furnish and file with the
department a consolidated annual report." N.J.S.A. 48:13A-
7.16(a) (emphasis added).

 15 A-3236-15T2
included CPA-certified consolidated financial statements of

Waste Management, Inc. and its subsidiaries, including WMNJ,

complied with Camden's requirements.

 Affirmed.

 16 A-3236-15T2