858 A.2d 560

FRANK WEIDNER, PLAINTIFF–RESPONDENT, v. TULLY ENVI-
RONMENTAL, INC., DEFENDANT–APPELLANT, AND COUN-
TY OF BERGEN, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 22, 2004—Decided October 12, 2004.

316

Before Judges CONLEY, LISA and WINKELSTEIN.

*Catherine A. Trinkle,* argued the cause for appellant (*Kirkpatrick & Lockhart,* attorneys; *Brian S. Montag* and *Mary E. Storella,* on the brief).

*Thomas S. Cosma,* argued the cause for respondent, County of Bergen (*Connell Foley,* attorneys; *Mr. Cosma,* of counsel; *Angelica S. Liem,* on the brief).

*Sills Cummis Radin Tischman Epstein & Gross,* attorneys for respondent, *Frank Weidner,* relying on the brief filed by respondent, County of Bergen.

*Dennis J. Oury,* attorney for intervenor, Bergen County Improvement Authority, relying on the brief filed by respondent, County of Bergen.

The opinion of the court was delivered by

WINKELSTEIN, J.A.D.

In this public contract action, defendant Tully Environmental, Inc. appeals from an April 8, 2003 summary judgment that in part (1) denied Tully's motion to dismiss the amended complaint for

failure to state a claim, and (2) granted plaintiff Frank Weidner's cross-motion, voiding a December 27, 2002 agreement (the Agreement) between Tully and Bergen County for the redevelopment of Overpeck County Park. In the order memorializing his decision, Judge Jonathan Harris also issued a permanent injunction against any further performance under the Agreement. We affirm.

This case arises out of an interpretation of an amendment to the Local Public Contracts Law, *N.J.S.A.* 40A:11–1 to–50, known as the Competitive Contract in Lieu of Public Bidding statute, *N.J.S.A.* 40A:11–4.1 to–4.5, enacted in January 2000 and effective ninety days later. This legislation provides public entities with an alternative method to solicit proposals for public projects. The amendment contemplates awarding contracts on the basis of an evaluation of the "technical, management, and cost-related criteria, ... all developed in a way that is intended to meet the specific needs of the contracting unit ...," *N.J.S.A.* 40A:11–4.4b, to allow a municipality to make "a finding that a specific proposal is the most advantageous, price and other factors considered...." *N.J.A.C.* 5:34–4.3(d). Under this amendment, the governmental entity is no longer obligated to award the contract to the lowest responsible bidder. *See N.J.S.A.* 40A:11–4.1 to–4.4.

In this case, on October 28, 2002, Bergen County published a request for proposals (RFP) to develop Overpeck Park, a former landfill. Because the RFP contemplated that a contractor would charge fees for the placement of fill materials at the park, the project would be a positive revenue source without cost to the County. The RFP also indicated that "proposers are free to (but not encouraged [to]) ... make modifications to the contract documents ...," with "all such modifications [to be] made at the risk of the proposal's rejection." The criteria for evaluating proposals, set forth in the RFP at § 1.2, said:

> [A] proposer's inability or refusal to strictly adhere to a particular element will result in a score that reflects both the materiality of the element as well as the degree to which the proposal varies from requirements of the RFP. Each proposal, to the extent that it varies from the terms of the RFP, will be evaluated on the basis of whether it maintains the essential and material elements of the County's

desired business and risk posture as embodied in the Agreement and Technical Specifications.

The technical specifications called for five million cubic yards of fill material to fill and grade the park. The fill material was "at a minimum, [to] meet the NJDEP Non–Residential Direct Contact Soil Cleanup Criteria." The specifications also provide that the "[f]ill material delivered to the site shall be rejected if the material does not satisfy the requirements of the Approved Fill Material Acceptance Protocol."

Although about a dozen contractors attended a prebid meeting, Tully was the only contractor to submit a proposal. In its proposal, Tully made two changes to the contract documents. First, Tully proposed an alternative acceptance criteria (AAC) protocol which called for fill materials at levels "moderately above the Non–Residential Direct Contact Soil Cleanup Criteria" called for in the specifications. That AAC protocol had been previously approved by the New Jersey Department of Environmental Protection (NJDEP) in connection with other projects. This revised protocol would, as did the protocol called for in the RFP, require NJDEP and County approval.

Second, Tully added a provision, referred to as an "economic infeasibility provision," that read:

If, as the Project progresses, market conditions for the receipt of Fill Material change so that the Fill Material Revenue falls to a point that the Project is no longer economically viable the Contractor and Owner shall negotiate the remainder of the Project so that the revenue and the cost associated with the completion of the Project is economically achievable. Accordingly, if, due to unforeseen circumstances, conditions change through no fault of the Contractor, that render the Contract economically infeasible, then the Contractor may petition the County for consent to cancel the Contract which consent will not be unreasonably withheld.

Upon receipt of Tully's proposal, in accordance with the procedure established in the Competitive Contract amendment, the County created an evaluation committee to review and evaluate Tully's proposal. The committee gave it a score of 96 out of a possible 100. The committee "unanimously conclude[d] that the execution of the Redevelopment Agreement with Tully Environmental, Inc., cost and other factors considered, is in the best

interest of the citizens of Bergen County...." Based on the recommendation of the committee, on December 18, 2002, the County adopted a resolution awarding the project to Tully. The Agreement was executed on December 27, 2002.

Plaintiff, as a citizen and taxpayer, filed this action challenging the contract award. He contends that the proposal submitted by Tully materially deviated from the terms of the RFP, giving Tully an unfair advantage over other potential bidders. Plaintiff subsequently filed an amended complaint and order to show cause seeking an order to restrain Tully and the County from proceeding with the project and find Tully's proposal nonconforming and void. Although Bergen County had initially accepted the project and was named as a defendant, the County joined with plaintiff and asked that the court void the Agreement.

In response to the order to show cause, Tully filed a motion to dismiss the amended complaint and a motion to disqualify the County's attorney.[1] Without objection, the Law Division converted both motions into cross-motions for summary judgment and rendered an extensive oral decision denying Tully's motion, and granting summary judgment in favor of plaintiff, finding the Agreement between Tully and the County to be null and void; the judge enjoined further performance under the Agreement. In arriving at his decision, Judge Harris made the following pertinent findings:

> [T]he request for proposal allows proposers to make modifications to the contract documents. [It] allows proposers to strike out or modify the provisions of the agreement and the technical specifications. But to the extent that deletions and modifications are made, they shall be viewed negatively in the evaluation process unless such changes enhance the position of the County. Section 4.1 in the Instructions to Proposers says as much.
>
> * * *
>
> Each proposal to the extent that it varies from the terms of the RFP will be evaluated on the basis of whether it maintains the essential and material elements of the County's desired business and risk posture as embodied in the agreement

---

[1] In his April 8, 2003 order, Judge Harris denied the motion to disqualify the County's attorney. No appeal has been taken from that portion of the order.

and technical specifications. Proposals that do not materially comply with the technical specifications of the RFP and agreement will be failed and a score of zero will be awarded.

⋈ * ⋈

The County in this case had the discretion to determine whose bid ... of course, in this case there was only one—will be the most advantageous to the County considering price and other factors. Tully claims that the differences between what it proposed and what the County sought are either nil or inconsequential or nonmaterial. I do not reach the question globally whether or not the language in this request for a proposal contravenes the Local Public Contracts Law insofar as it invites modifications. I only determine whether or not what was proposed is or is not in conformity or a material deviation, and whether or not the County through the use of its experts acted contrary to law in scoring.

And I would say this. Tully got a score of 96 out of 100. And in the section relating to fill, it got 35 points of 35. In other words, the County evaluators took nothing off even though there was a conceded, somewhat moderately above, contamination for what was proposed in the alternative acceptance criteria than what the request for a proposal asked for.

* * *

I conclude, as a matter of fact and law, that what was proposed is a deviation and it's not just a deviation that is of little or no moment, but it is material under *Meadowbrook [Carting Co., Inc. v. Borough of Island Heights,* 138 *N.J.* 307, 650 *A.*2d 748 (1994)].

The reason for that is this. What the County effectively did was to waive the obligation to provide nonresidential direct contact soil clean-up criteria. The test then is whether the effect of the waiver would be to deprive the County of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements. And second, whether it is of such a nature that [its] waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition.

... [T]he use of alternative acceptance criteria deprives the municipality of what it requested. It also, and more importantly, changes the level playing field and fosters the potential for mischief. Once again, I do not find any such mischief in this case.

* * *

[T]he County palpably erred as a matter of law in not appreciating the material deviation from its technical requirement and in not giving a zero to the discordancy. On both levels, there [are] errors of law, all of which redounds to a failing grade ... and caused by a material deviation.

As significant as that is the other deviation ... in some ways is even more troubling because at least the alternative acceptance criteria has a gloss of rationality to it.... [T]he escape clause, in fact, is exactly that. It is not an impracticability clause. It [is] not a frustration of purpose clause. What it is, is a gross protection of a private party from the vagaries of the market. Something

that the frustration of purpose doctrine and impracticability doctrine does not countenance.

\* \* \*

The event upon which the obligor relies to excuse his performance cannot be an event that the parties foresaw at the time of the contract. And yet, these parties clearly foresaw what they were talking about. They're talking about market conditions for the receipt of fill material that changes. It clearly can't be a frustration of purpose because the parties identified the very contingency that they were trying to contract around, and that's not what Section 265 of the *Restatement* is about.

\* \* \*

And under a different section of *Restatement of Contracts*, Section 281, which has applicability to this, mere economic hardship is not enough to allow a rescission of the contract. I must say that it is almost more offensive for a public body to give a private party under the Local Public Contracts Law a way out based upon the ordinary circumstances of the marketplace. This clause does not talk about the availability of fill. It talks about the market conditions and the revenue. We're talking about dollars. We're not talking about whether the fill is out there or not.

\* \* \*

By allowing that in the contract, the County was waving what was otherwise a requirement that the parties stick to their risk assessment. And this also dramatically changed the cliché, "level playing field."

\* \* \*

I find and conclude that the manner that the County ultimately entered into this contract was violative of the Local Public Contracts Law for the reasons that I have indicated.

\* \* \*

[P]laintiff is entitled to a declaration of rights determining that the December 27, 2002 Overpeck County Park Redevelopment Project Agreement is null and void, and of no force and effect, and that a permanent injunction is entered against any further performance thereunder.

## On appeal, Tully raises the following arguments:

I. THE LOWER COURT IMPROPERLY AWARDED PLAINTIFF SUMMARY JUDGMENT AND SHOULD HAVE GRANTED SUMMARY JUDGMENT TO TULLY UPHOLDING THE COUNTY'S AWARD OF THE CONTRACT TO TULLY.

A. THE COMPETITIVE CONTRACTING STATUTE IS DESIGNED TO CONFER DISCRETION TO MUNICIPALITIES TO SCORE AND EVALUATE BIDS.

B. TULLY'S BID PROPOSAL CONFORMED TO THE TERMS OF THE RFP, THUS THE LOWER COURT COMMITTED REVERSIBLE ERROR TO THE EXTENT THAT IT APPLIED THE *MEADOWBROOK/LONGO* TEST FOR MATERIALITY.

C. THE LOWER COURT DID NOT APPLY THE CORRECT STANDARD OF REVIEW TO THE COUNTY'S DECISION TO AWARD THE CONTRACT TO TULLY.

D. THE COUNTY DID NOT GROSSLY ABUSE ITS DISCRETION IN SCORING TULLY'S BID PROPOSAL.

   1. THE COUNTY'S FAILURE TO SCORE TULLY'S BID PROPOSAL AT ZERO FOR CHANGES MADE TO THE TECHNICAL SPECIFICATIONS DID NOT CONSTITUTE GROSS ABUSE.

   2. THE COUNTY'S FAILURE TO SCORE TULLY'S BID PROPOSAL AT ZERO FOR CHANGES MADE TO THE REDEVELOPMENT AGREEMENT DID NOT CONSTITUTE A GROSS ABUSE OF DISCRETION.

E. EVEN APPLYING THE INCORRECT STANDARD OF ARBITRARY AND CAPRICIOUS, THE LOWER COURT'S DECISION SHOULD BE REVERSED.

We have carefully reviewed the record in light of these contentions and the applicable law. We are satisfied that Tully's arguments are without merit, and we affirm substantially for the reasons set forth by Judge Harris in his thorough and well reasoned opinion. *See R.* 2:11–3(e)(1)(A) & (E). We add the following comments.

■■■■■ With the enactment of the Competitive Contracting statute, New Jersey State and local governments are now operating under similar frameworks when awarding public contracts. *See N.J.S.A.* 52:34–12(g); *N.J.S.A.* 40A:11–4.1. Each scheme provides the public entity with the discretion to determine which conforming bid is most advantageous, price and other factors considered. *See ibid.*; *In re Protest of the Award of the On–Line Games Prod. & Operation Servs. Contract,* 279 *N.J.Super.* 566, 594–96, 653 *A.2d* 1145, 1160–61 (App.Div.1995). To determine whether a contracting agency's decision as to the proposal's conformity is congruent with the legislative policies underlying the public bidding laws, "[t]he preliminary inquiry is whether the bid deviates from the RFP. If there is no deviation, the bid must be deemed conforming. If there is a deviation, a decision must be made as to whether it is material and can be waived." *Id.* at 594, 653 *A.2d* at 1160.

■ Judge Harris found that the changes made to the Agreement materially deviated from the RFP, and as a result he invalidated the proposal and the Agreement. *See Meadowbrook Carting Co., Inc. v. Borough of Island Heights,* 138 *N.J.* 307, 314, 650 *A.*2d 748, 751 (1994) (noncompliant bids that contain a material departure invalidate both the bid and contract based upon the bid). In its brief, Tully agrees that if a proposal materially deviates from the terms of the RFP it is fatally flawed; but, it takes the position that because the RFP invited the potential proposers to make changes to the contract, albeit at their own risk, the modifications it made did not render its proposal nonconforming. We disagree.

■ Despite the RFP's invitation to make changes to the Agreement, it remains incumbent upon the contracting entity to determine if those modifications render the proposal nonconforming. Although the Competitive Contracting statute allows significant deference, discretion and flexibility to the contracting public entity, that deference does not permit the public entity to accept a material defect that renders the proposal noncompliant with the RFP.

■ In *Meadowbrook, supra,* the New Jersey Supreme Court adopted a two-part test to determine if noncompliance with a provision of the proposal is material. The test is:

[F]irst, whether the effect of a waiver would be to deprive the municipality of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements, and second, whether it is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition.

[138 *N.J.* at 315, 650 *A.*2d at 752 (quoting *River Vale Township v. R.J. Longo Constr. Co., Inc.,* 127 *N.J.Super.* 207, 216, 316 *A.*2d 737, 741 (Law Div.1974)).]

Here, both changes made by Tully's proposal are material under this test and cannot be waived, thus rendering the proposal nonconforming. It called for fill material more contaminated than that specified in the RFP. In light of the significant quantity of fill needed to complete the project—five million cubic yards of materi-

al—this deviation cannot be deemed minor or inconsequential. The change effectively allowed Tully to submit a proposal founded upon criteria different from the criteria available to the other potential bidders, undermining potential competition.

The economic infeasibility clause is even more objectionable. It gave Tully a distinct advantage over other contractors by providing a mechanism to allow Tully to bid at no economic risk—it could essentially walk away from the project if it became economically impractical to continue, based solely on a change in market conditions. This provision placed Tully in a position to renegotiate the Agreement, or, for that matter, be excused from performance of the Agreement, in the event future market conditions prevented it from achieving the revenue it anticipated when it submitted its proposal. The provision deprives Bergen County of its assurance that the Agreement will be performed and completed according to the requirements of the RFP. It permits Tully to unilaterally avoid its obligation to complete the project, fundamentally compromising the County's position and undermining the integrity of the contracting system by giving Tully an advantage over other potential bidders. Had other contractors been made aware that such a provision was acceptable to the County, they too may have submitted proposals.

The changes made by Tully are more than inconsequential discrepancies that may be waived. *See Meadowbrook, supra,* 138 *N.J.* at 314, 650 *A.*2d at 751 (only "minor or inconsequential" conditions may be waived). Immaterial "conditions may not be those 'whose waiver is capable of . . . encouraging improvidence or extravagance, or likely to affect the amount of any bid or to influence any potential bidder to refrain from bidding, or which are capable of affecting the ability of the contracting unit to make bid comparisons.'" *Star of the Sea Concrete Corp. v. Lucas Bros., Inc.,* 370 *N.J.Super.* 60, 69, 850 *A.*2d 559, 564 (App.Div.2004) (quoting *Terminal Constr. Corp. v. Atl. County Sewerage Auth.,* 67 *N.J.* 403, 412, 341 *A.*2d 327, 332 (1975)). By this standard, the changes to the Agreement allowing Tully to use more contaminat-

ed fill than that called for in the RFP and to avoid adverse financial consequences related to market conditions are material and consequently render the proposal nonconforming.

We recognize that the Competitive Contracting statute was intended by the Legislature to provide a flexible method to award bids by the use of a scoring and evaluation process. It entitles the contracting body to deference in its evaluation of the needs of the contracting unit. But, that deference does not extend to a waiver of a material deviation in the proposal that renders the proposal nonconforming.

Affirmed.